UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.08-81565-Civ-Hurley/Hopkins

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

vs.

CREATIVE CAPITAL CONSORTIUM, LLC,
A CREATIVE CAPITAL CONCEPT$, LLC, and
GEORGE L. THEODULE,

     Defendants.
_____/

## ORDER AND REPORT AND RECOMMENDATION AS TO DOLCE REGENCY SUITES, LLC, MOTION FOR PROTECTIVE ORDER RELATING TO USE OF CERTAIN TESTIMONY AND MOTION FOR SANCTIONS AGAINST ATTORNEY RACHEL K. PAULOSE  (DE 147)

**THIS CAUSE** has come before this Court upon an Order referring all discovery matters to the undersigned United States Magistrate Judge for final disposition.  (DE 78).  This Court has before it Dolce Regency Suites, LLC's  Motion for Protective Order Relating to Use of Certain Testimony and Motion for Sanctions Against Attorney Rachel K. Paulose, and Plaintiff's Response in Opposition to Non-Party's Motion for Protective Order.  (DEs 147, 148).  For the reasons that follow, this Court **DENIES** the Motion for Protective Order, and **RECOMMENDS THAT** the District Court **DENY** the Motion for Sanctions.  (DE 147).

## BACKGROUND

The instant case was commenced by Plaintiff, the Securities and Exchange Commission ("SEC") upon the filing of a complaint seeking injunctive relief, an ex parte motion for a temporary restraining order, and an emergency motion to appoint a Receiver.  (DEs 1-5).  The

District Court entered the ex parte Temporary Restraining Order against the named Defendants, Creative Capital Consortium, LLC ("Creative Capital Consortium"), Creative Capital Concept$, LLC ("Creative Capital Concepts"), and George Theodule ("Theodule") to enjoin Defendants from engaging in various business activities in violation of the Securities and Exchange Act of 1934.  (DE 7).  Subsequently, the Court also granted the SEC's Motion for Preliminary Injunction as to each of the named Defendants.  (DE 21).

On December 29, 2008, Jonathan E. Perlman ("Perlman") was appointed as Receiver over Defendants Creative Capital Consortium and Creative Capital Concepts.  (DE 8).  The receivership was initially expanded to include the following other companies: (1) United Investment Club, LLC; (2) Reverse Auto Loan, LLC; and, (3) Sancal Investment and Financial Services. (DE 14).  Thereafter, on February 12, 2009, Perlman field a Second Motion to Expand Receivership to include other entities, including, *inter alia*, Dolce Regency Suites, LLC, ("Dolce"), because Theodule was alleged to be an officer or person in control of such entities. (DE 32, pg. 2).

Approximately one (1) week later, on February 20, 2009, Bradford A. Patrick, Esq., ("Patrick") filed a notice of appearance on behalf of Dolce, wherein he requested "copies of all pleadings, motions, orders, correspondence, and other papers filed in this cause" be served upon Dolce through counsel.  (DE 33).  That same day, Patrick also filed a notice of change of address. (DE 34).  Although Patrick never filed a motion to intervene in the case, on March 16, 2009, he filed a response in opposition to the Receiver's Second Motion to Expand Receivership.  (DEs 52, 53).

The instant motion arises out of events which occurred during a deposition of Defendant

Theodule on August 14, 2009.  (DE 147, pg. 1).

Although the SEC scheduled the deposition of Theodule on August 14, 2009, the SEC failed to provide any notice to Patrick.  (DE 147, pg. 5; DE 148, pg. 3).  However, after having received a copy of a cross-notice of deposition from counsel for the Receiver, Mr. Koroglu ("Koroglu"), Patrick e-mailed the Receiver's office and obtained the call-in instructions so that he could attend the deposition telephonically.  (DE 147, pg. 3).  At 9:30 am, Patrick called in and spoke with counsel for the Receiver, Koroglu, and Mr. Weigel ("Weigel"), counsel for Theodule. (DE 147, pg. 3).  After Weigel stated that Theodule was running late, and that the deposition would not commence until at least 10:00 a.m., Patrick terminated the call and waited for an e-mail from Koroglu.  (DE 147, pg. 3).

At approximately 10:15 a.m., without having received an e-mail from Koroglu, Patrick e-mailed Koroglu to inquire as to the status of the deposition.  (DE 147, pg. 3).  Koroglu e-mailed Patrick, wherein he stated that although Patrick would be permitted to listen to the deposition, he would not be permitted to directly participate or ask questions.  (DE 147, pg. 3 and exh. A).

Patrick replied, and stated that disagreed with Koroglu's statement.  (DE 147, pg. 3 and exh. A).  However, Koroglu maintained his position, and noted that both the SEC and Receiver were of the opinion that although Patrick would be permitted to listen to the deposition out of courtesy, Patrick would not be permitted to question the deponent or lodge objections, because Dolce was not being deposed, and because Patrick had not filed a cross notice of deposition.  (DE 147, pg. 4 and exh. A).  Koroglu further stated that Rule 30 was "clear on the issue."  (DE 147, pg. 4 and exh. A).  After Patrick disputed such assertion, and asked which section of the Rule prohibited him from asking questions, Koroglu replied that if Patrick posed any questions, the

SEC and Receiver would lodge their objections.  (DE 147, pg. 4 and exh. A).

At approximately 11:30 a.m., without having heard anything further from Koroglu, Patrick e-mailed Weigel to inquire as to the status of the deposition.  (DE 147, pg. 4). Approximately 30 minutes later, Weigel responded, noting that "their" attorney was on the line. (DE 147, pg. 4 and exh. B).

Patrick called in to the deposition, and discovered that the deposition was already in progress.  (DE 147, pg. 5).  According to Dolce's motion, after Patrick identified himself, Paulose demanded that Patrick get off the phone, and stated that (1) he was not in the case and had not appeared; (2) he had not been noticed for the deposition; (3) he had not engaged in any discovery; and, (4) he was acting unethically by attempting to disrupt the deposition.  (DE 147, pg. 5).  Although Patrick objected, Paulose remained steadfast, and insisted that she or other counsel would call the Judge.  (DE 147, pg. 5).  Patrick dropped the call only after lodging another objection and stating that he was not proceeding unethically, and that he would send a letter to Paulose expressing his concerns.  (DE 147, pg. 5).

Off the phone, Patrick reviewed his file and verified that he attended, and participated fully, in all depositions noticed by the parties, including a previous deposition of Theodule, as well as the depositions of Ms. Dorothy Delisfort ("Delisfort"), Ms. Yolanda Williams, Ms. Gabrielle Alexis, Mr. Carlos Bonilla, Esq., Mr. Dan Harper, and Mr. Timothy Holly.  (DE 147, pg. 5).  Patrick further verified that he filed his notice of appearance in February of 2009, and that Paulose was present at each of the aforementioned depositions.  (DE 147, pg. 6).

Patrick then telephoned the deposition again, and insisted that he be permitted to proceed for the remainder of the deposition.  (DE 147, pg. 6).  However, Paulose and Koroglu both

purportedly stated that Patrick had no business attending the deposition, and stated that if everyone who was an "interested party" attended the deposition, there would be thousands of individuals in attendance.  (DE 147, pg. 6).  After Paulose stated that she was almost done with the deposition anyway, Patrick insisted that he be permitted to participate and demanded that Paulose and Koroglu contact the Court.  (DE 147, pg. 6).  The conversation ended with Patrick believing that Paulose was going to contact the Court.  (DE 147, pg. 6).

At 1:35 p.m. that afternoon, Koroglu e-mailed Patrick, wherein he indicated that (1) the Receiver agreed not to ask any questions of Theodule regarding Dolce; (2) the Receiver agreed that no testimony obtained from Theodule in that day's deposition would be used in the Receiver's Second Motion to Expand the Receivership to include Dolce; and, (3) notwithstanding the fact that Dolce's rights had already been implicated as a result of Theodule's previous deposition on April 9, 2009, in light of the Receiver's stipulations, there was no need for Patrick to participate in that day's deposition.  (DE 147, pgs. 6-7).

A short time thereafter, Weigel, counsel for Theodule, e-mailed Patrick to advise him that the deposition had begun at 10:21 a.m., and concluded at 1:58 p.m.  (DE 147, pg. 7).  At no time was Patrick advised as to the status of the deposition, or whether any contact with the Court had been made.  (DE 147, pg. 7).

During the afternoon of August 14, 2009, and again on August 17, 2009, Patrick attempted to obtain the court reporter information from Paulose.  (DE 147, pg. 7).  However, after getting no response from Paulose, Patrick attempted to obtain a copy of the transcripts of the deposition of both Theodule and Delisfort from the court reporter directly.  (DE 147, pg. 7).  Because he has been unable to obtain such transcripts, Dolce claims that Paulose has instructed

the court reporting agency not to release any information to Patrick. (DE 147, pgs. 7-8). The instant motion followed. (DE 147).

## DISCUSSION

Dolce seeks three types of relief: (1) an order prohibiting the use of any deposition testimony obtained in the depositions in which Dolce was not given notice, in any filing related to the Receiver's Second Motion to Expand Receivership (DE 32), including the depositions of Delisfort and Theodule, which occurred on August 13 and 14, respectively; (2) an award of sanctions against SEC counsel Rachel Paulose; and, (3) an order directing that Dolce be properly noticed in all matters hereafter. (DE 147, pg. 1). In support of the motion, Dolce contends that it is an interested party who should have been noticed of the deposition of Theodule because Patrick has filed a notice of appearance and responded in opposition to the Second Motion to expand Receivership. (DE 147, pgs. 8-12). Dolce further contends that any individual in attendance at a noticed deposition is permitted to pose questions at a deposition, even if another party noticed the deposition. (DE 147, pgs. 8-12). Dolce contends that Paulose should be sanctioned pursuant to the inherent authority of the Court due to her behavior surrounding Theodule's deposition. (DE 147, pgs. 12-13).

In response to the Motion, the SEC notes that it only noticed Theodule and the Receiver of the August 14 deposition because only Theodule and the Receiver had a legal interest in the deposition. (DE 148, pg. 3). The SEC also argues that Dolce's Motion should be denied because (1) there was no tirade, as alleged by Dolce; (2) as a non-party, Dolce has no right to attend or participate in the depositions in the case; (3) Dolce has not intervened and has no right to intervene under Rule 24; and, (4) Dolce has suffered no prejudice as a result of the depositions

6

because the questions focused solely on the SEC's complaint, and no questions concerning Dolce were posed.  (DE 148, pgs. 1-7).

## I.  MOTION FOR PROTECTIVE ORDER

Considering Dolce's request for a protective order first, the SEC notes, and Dolce acknowledges in its motion, that the Receiver previously stated that it would not use any testimony obtained from the depositions to support its Second Motion to Expand Receivership. (DE 147, pg. 6; DE 148, pg. 6).  Moreover, on September 10, 2009, the Receiver filed a Notice indicating that it was withdrawing, albeit without prejudice, that portion of the Second Motion to Expand Receivership that related to Dolce.  (DE 154).  The District Court subsequently entered an Order granting the Receiver's Second Motion to Expand Receivership, consistent with the Receiver's notice of withdrawal of the motion as to Dolce.  (DE 162).

In light of the foregoing, this Court concludes that Dolce has failed to meet its burden of showing that any harm occurred, such that any protective order is warranted.  Therefore, Dolce's Motion for Protective Order is **DENIED**.  (DE 147).

*See* Fed. R. Civ. P. 26(c) (2009) (noting that before a protective order may issue, the movant must show good cause why justice requires an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense."); *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000) (providing that the movant must show injury "with specificity"); *Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121-1122 (3d Cir. 1986), *cert. denied*, 484 U.S. 976 (1987) (noting that the burden lies with the movant; that the movant must show good cause by demonstrating a particular need for protection; that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test;

7

and, that the harm must be significant, as opposed to a mere trifle).

## II.  MOTION FOR SANCTIONS

Dolce contends that Paulose should be sanctioned, pursuant to the Court's inherent authority, for her conduct surrounding the Theodule deposition.  (DE 147, pgs. 12-13).  Dolce specifically argues that Paulose should be sanctioned because she: (1) intentionally violated Rule 30(b)(1) and the Local Rules by failing to notice Dolce of the depositions of Theodule, Delisfort, Alexis, and Williams; (2) demanded that Patrick cease attending Theodule's deposition; (3) failed to contact the Court to resolve the dispute over Patrick's attendance; and, (4) instructed the court reporter to withhold the transcripts from Patrick.  (DE 147, pgs. 12-13).  Patrick also contends that sanctions are warranted because Paulose acted unprofessionally, in that she purportedly made intentional factual misrepresentations on the record, accused Patrick of being unethical when he attempted to participate in Theodule's deposition, engaged in contumacious behavior in violation of the local rules, misstated the number of times Patrick had appeared for Dolce in the case, refused to respond to Patrick's demand that she place an emergency call to chambers, and refused to provide the contact information for the court reporter.  (DE 147, pgs. 12-13).

The court's inherent authority is " . . . derived from the court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  Pursuant to the court's inherent authority, a court may assess attorney's fees and costs against an attorney when he or she has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Byrne*, 261 F.3d at 1106 (*citing Chambers*, 501 U.S. at 45-46) (*footnotes omitted*).

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (*citing In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). "Because the court's inherent power is so potent, it should be exercised 'with restraint and discretion.'" Byrne, 261 F.3d at 1106 (*citing Chambers*, 501 U.S. at 50).

Bad faith can be found where the court finds that a ". . . fraud has been practiced upon it, or that the very temple of justice has been defiled," where a party delays or disrupts the litigation, or hampers the enforcement of a court order, or where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *See Chambers*, 501 U.S. at 46; *Barne*s, 158 F.3d at 1214 (*citation omitted*). In determining whether sanctions should be awarded under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Rothenberg v. Sec. Mgmt Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984).

Although Dolce does not seek sanctions pursuant to Fed. R. Civ. P. 37, the Eleventh Circuit has held that where "reasonable people could differ as to the appropriateness of the contested action," it would be inappropriate to impose sanctions under the rule. *See Maddow v. Procter & Gamble Co., Inc.*, 107 F. 3d. 846, 853 (11th Cir. 1997) (holding that court abused its discretion in awarding attorney's fees where the party relied on out of Circuit district court caselaw, and there was no controlling Circuit caselaw) (*citing Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

This Court concludes that Paulose should not be sanctioned because there has been no showing of bad faith on the part of Paulose, and because reasonable minds could differ as to several of the issues at hand.

First, Dolce failed to make any showing that Paulose acted in bad faith.  (DE 147, pgs. 11-13).  As a result, Dolce's request for sanctions could be denied on that basis alone.

Nevertheless, this Court also concludes that because reasonable minds could differ as to the issues of whether Dolce is a "party," whether the SEC was required to notice Dolce of Theodule's deposition, and whether depositions are proceedings which are open to the public, sanctions would be inappropriate.

Rule 30 provides in part that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party."  Fed. R. Civ. P. 30(b)(1) (2009). Although the Rule contains repeated references to a "party," the Rule does not define who qualifies as a party for purposes of the Rule.  *See* Fed. R. Civ. P. 30(a)(1), (2); 30(b)(1)-(6); 30(c)(3); 30(d)(2), (3); 30(e); 30(g) (2009).

The SEC cites only one case for the proposition that the mere act of filing a notice of appearance does not render an individual a party, *Beras de Rodriguez v. Hess Oil Virgin Islands Corp.*, No. 740/1993, 2004 WL 2984301, *5 (V.I. Dec. 3, 2004).  (DE 148, pg. 4).  However, such case only addresses the narrow issue of whether one attorney qualified as "co-counsel" in the representation of three (3) plaintiffs in a wrongful death action.  *See Beras de Rodriguez*, 2004 WL 2984301 at *4.  Because the case fails to address the issue presented by this case, namely, whether Dolce qualifies as a party for purposes of Rule 30, the SEC's reliance on such case is misplaced.

Generally, to be considered a party to an action, an individual or entity must be named in the caption to the summons or complaint.  *See Devlin v. Scardeletti*, 536 U.S. 1, 7-8 (2002) (*citing* Restatement (Second) of Judgments, § 34(1), p. 345 (1980)).  If not originally named as a

10

party, an individual or entity generally becomes a party "by intervention, substitution, or third-party practice." *Karcher v. May*, 484 U.S. 72, 77 (1987) (*citing* 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice, ¶ 203.06 pp. 3-20) (1987)). Nevertheless, in *Devlin*, 536 U.S. at 7-14, the United States Supreme Court took an expansive view of the term "party," and held that, within the context of a Rule 23 class action, an unnamed class member who objected in a timely fashion to court approval of a settlement had the power to bring an appeal of the District Court order without having to first intervene. In so holding, the Court observed that the term "'party' does not state an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin*, 536 U.S. at 10. The Court further reasoned that non-named class members could be considered parties because they have an interest in the settlement of the case. *See Id*. ( "non-named class members are parties to the proceedings in the sense of being bound by the settlement.")

In light of *Devlin*, Dolce could arguably be considered a party because, at the time of the depositions at issue, Dolce had an interest in the resolution of the Receiver's Second Motion to Expand Receivership. Even the SEC agrees with such proposition. (DE 148, pg. 3).

Unfortunately, neither Dolce nor the SEC have provided, nor has this Court been able to find, any case decided under Rule 30 which addresses the issue at hand: namely, whether the SEC was required by the Rule to notice Dolce of Theodule's deposition, where Dolce is not a formal party to the case. In the absence of controlling authority, this Court is hesitant to recommend the imposition of sanctions.

Finally, courts disagree as to whether depositions are open to the public. *See In re Thrifty Dutchman, Inc.*, 97 B.R. 111, 111-112 (S.D. Fla. 1989) (noting that "depositions are public

11

proceedings to which the public has access unless compelling reasons exist for denying access")
(*citing Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir.1979) and 11 U.S.C. § 107)); *Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D. Va. 1994) ("[p]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law . . . and, in general, they are conducted in private as a matter of modern practice.") (*quoting Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984); *citing In re The Reporters Comm. For Freedom of the Press, et al.*, 773 F.2d 1325, 1338 (D.C. Cir. 1985)), *cert. denied*, 519 U.S. 862 (1996).  In light of  *Amato* and  *In re Thrifty Dutchman, Inc.*, reasonable minds could differ as to whether depositions are proceedings which are open to the public.

In light of the foregoing, this Court **RECOMMENDS**[1] that the District Court **DENY** Dolce's Motion for Sanctions.  (DE 147).

### III. DOLCE'S REQUEST TO BE NOTICED IN ALL FUTURE MATTERS

Finally, Dolce requests that it be noticed in all future matters in the litigation.  (DE 147, pgs. 1, 13).  This Court **RECOMMENDS** that the District Court **GRANT** such request.  (DE 147).[2]

By arguing that Dolce limited its appearance to matters concerning the Receiver's Second Motion to Expand, and that significant discovery has occurred in the case without the participation of Dolce, (DE 148, pg. 2), the SEC implies that Dolce's participation in the case has

---

[1]  This Court enters a Recommendation as to Dolce's Motion for Sanctions because the imposition of sanctions pursuant to the inherent authority of the Court arguably falls outside the scope of the District Court's order of referral of discovery matters.  (DE 78).

[2]  As with Dolce's Motion for Sanctions, this Court enters a Recommendation as to Dolce's request for notice because such request is arguably outside the scope of the District Court's order of referral of discovery matters.  (DE 78).

been minimal.  However, the docket shows that Patrick, as counsel for Dolce, has been listed in

the certificates of service of numerous pleadings since the date he filed his notice of appearance.

While this Court acknowledges that the Receiver listed Patrick in certificates of service on

various pleadings with regard to discovery and the Receiver's Second Motion to Expand

Receivership, (DEs 44, 45, 46, 48, 50, 56, 57, 62, 63, 64, 65, 66, 75, 76, 77, 91, 115, 126, 132,

133, 134, 135, 136, 141), the docket also shows that SEC counsel listed Patrick in certificates of

service in not only discovery matters, but also in pleadings with regard to whether Theodule

provided an accurate Sworn Accounting, a Joint Scheduling and Discovery Report, and in its

response to Defendant George Theodule's Motion for Summary Judgment.  (DEs 39, 55, 58, 67,

71, 104, 110, 122, 123).  In light of Dolce's interest in the case, as discussed with regard to

*Devlin*, and in light of the fact that both the SEC and the Receiver have been noticing Dolce with

regard to various aspects of the case, an order requiring the SEC and the Receiver to continue

notice Dolce in all future matters herein appears to be appropriate.


### CONCLUSION

In conclusion, **IT IS HEREBY ORDERED THAT** Dolce Regency Suites, LLC's

Motion for Protective Order Relating to Use of Certain Testimony and Motion for Sanctions

Against Attorney Rachel K. Paulose is **DENIED**.  (DE 147).   **IT IS FURTHER**

**RECOMMENDED THAT** the District Court **DENY** Dolce's Motion to Sanctions Against

Attorney Rachel K. Paulose, and that the District Court enter an Order requiring that the SEC and

the Receiver notice Dolce in all future matters in the instant case.  (DE 147).


13

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED AND DONE AND ORDERED** in Chambers this 24 day of November, 2009, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies:
The Hon. Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida
All Counsel of Record
Bradford A. Patrick, Esq. (counsel for Dolce)

14