UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81565-CV-HURLEY/HOPKINS

SECURITIES AND EXCHANGE
COMMISSION

    Plaintiff,

v.

CREATIVE CAPITAL CONSORTIUM,
LLC, et al.,

    Defendants.
_____/

## ORDER DENYING NON-PARTY OPTIONSXPRESS, INC.'S MOTION TO INTERVENE

**THIS CAUSE** comes before the Court upon non-party optionsXpress, Inc.'s Motion to Intervene and Modification of Order Dated January 23, 2013 [ECF No. 293]. Upon review, the Motion will be denied as untimely.

## BACKGROUND

From 2007 to 2008, George Theodule perpetrated a Ponzi scheme through the use and control of Creative Capital Consortium, LLC and other entities. On December 29, 2008, the Securities and Exchange Commission filed a claim for securities fraud against Creative Capital Consortium, LLC. Jonathan E. Perlman was appointed as Receiver, and the Court entered Final Judgment in favor of the SEC on March 25, 2010.

In April 2012, the Receiver filed a claim against optionsXpress, a brokerage firm, before the Financial Industry Regulatory Authority, seeking to recover Ponzi investor funds that were transferred to optionsXpress. The FINRA arbitration has temporarily adjourned and is set to resume in January 2016.

On January 23, 2013, upon an unopposed motion, the Court entered an "Order of Confirmation of Ownership of Certain Personal Property" [ECF No. 271]. The Order found that the optionsXpress account titled "Gabrielle Alexis/George Theodule" and numbered "0549-6260" was "funded by Receivership proceeds and therefore property of the Receivership." The Order cited an affidavit from Sherry M. Bennett, a forensic accountant, who "traced" Ponzi investor funds to the optionsXpress account. No contrary evidence was presented to the Court. Two days later, on January 25, 2013, the Receiver notified optionsXpress of the Court's Order by filing a Notice of Filing Order in the FINRA arbitration [*See* ECF No. 298-2].

On April 15, 2015, Ms. Bennett was cross-examined before the FINRA arbitration panel. On April 20, 2015, a trial began before this Court in a related case, *Perlman v. Wells Fargo Bank, N.A.*, 10-cv-81612. Ms. Bennett was also cross-examined in that case. The cross-examination of Ms. Bennett, and the filing of other affidavits, has caused optionsXpress to believe that the Court's Order was entered in error.

The "tracing" of the funds in the Alexis-Theodule optionsXpress account is in dispute before FINRA. According to optionsXpress, the Receiver has advocated that the FINRA panel should defer to the Court's finding on this issue, and the panel appears willing to do so. To defend itself before FINRA, optionsXpress moves to intervene to seek modification of the Court's Order.

## LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure authorizes mandatory and permissive intervention. Fed. R. Civ. P. 24(a), (b). A court must allow a non-party to intervene if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's

2

ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  A court may allow a non-party to intervene if it "has a claim or has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Motions to intervene must be "timely."  Fed. R. Civ. P. 24(a), (b).  Timeliness is a "threshold factor that must be satisfied before the other factors should be considered." *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 254 Fed. App'x 769, 771 (11th Cir. 2007) (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)).  A district court must consider four factors when determining timeliness:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir.1977)).

## DISCUSSSION

The Court finds that optionsXpress' motion is untimely:  (1) too much time passed between when optionsXpress knew to file its Motion and when it did; (2) granting optionsXpress' Motion would prejudice Receiver; (3) denying it will not prejudice optionsXpress; and (4) no unusual circumstances affect this determination.

A.   DELAY

optionsXpress knew of its interest in this case on January 25, 2013, two and a half years before filing its motion to intervene.  Knowledge of an interest is more than "mere knowledge

3

that an action is pending;" it is an "appreciation of the potential adverse effect an adjudication of that action might have on one's interests . . ." *Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986) (quoting *Jefferson Cnty.*, 720 F.2d at 1516). For example, when black employees sued their employer for racial discrimination, the white employees should not have known of their interest in the case until they felt the adverse effect from a remedial injunction. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977). By contrast, when a national organization was sued for trademark infringement, its corporate members who shared the same trademark should have known of their interest well before a judgment was entered. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 272 Fed. App'x 817, 819 (11th Cir. 2008) (rejecting the intervenors' argument that "they had no reason to suspect their interests would be affected by the suit until after the trial judge ruled in [their adversary's] favor").

The Receiver notified optionsXpress on January 25, 2013 that the Court had found that the Receivership owned the funds in the Alexis-Theodule Account. On that date, optionsXpress should have appreciated the adverse effect of that Order. Property held in an optionsXpress account, the Court found, could be recoverable. Yet optionsXpress argues it knew nothing on January 25, 2013. According to optionsXpress, it did not know of its interest until April 2015, when Ms. Bennett was cross-examined. Only then could it "have known that her opinion was based on nothing more than conjecture and assumption." Mot. at 8. But this position misses the meaning of "interest." The alleged impeachment of Ms. Bennett did not cause the Court's Order to become adverse to optionsXpress. Instead, the Order was adverse upon its entry. And while an "[a]bsolute measures of timeliness" is not dispositive, *See Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1479 (11th Cir. 1993) *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007), optionsXpress' two year and four month delay is

4

closer to those cases holding motions untimely than those that do not. *Compare Reeves v. Wilkes*, 754 F.2d 965, 970 (11th Cir. 1985) (finding two years and eight months to be untimely); *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 254 Fed. App'x 769, 771 (11th Cir. 2007) (finding 22 months to be untimely) *with Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002) (finding six months to be untimely); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (finding seven months to be timely); *Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986) (finding six weeks to be timely); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) (finding a year to be timely). Therefore, the first factor weighs against intervention.

### B. PREJUDICE

The second and third factors, "prejudice," are "the essence of the timeliness inquiry." *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1479 (11th Cir. 1993) *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). The inquiry is whether prejudice to one side would "outweigh" the prejudice to the other. *See Brown ex rel. O'Neil v. Bush*, 194 F. App'x 879, 883 (11th Cir. 2006). In this case, the prejudice to Receiver in allowing intervention would be greater than the prejudice to optionsXpress in denying it.

Receiver has litigated both a bench trial and a jury trial before this Court, both representing a substantial investment of time and money. The parties to *Wells Fargo* examined Ms. Bennett at length. Had optionsXpress timely moved to intervene, it too would have had the right to introduce evidence, file briefs, and cross-examine Ms. Bennett. *See Daggett v. Comm'n on Gov't Ethics and Election Practices*, 172 F.d 104, 115 (1st Cir. 1999). Intervention before trial would have been more efficient, both to the parties and to the Court. Such "judicial economy is an important consideration in determining whether intervention is appropriate."

5

*Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986). Instead, optionsXpress waited until after a bench and jury trial that covered the issue in dispute before seeking to modify the Order.

Comparatively, denying intervention would have minimal or no prejudicial effect on optionsXpress. "[T]he thrust of the [prejudice] inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1517 (11th Cir. 1983). The Court's Order does not bind optionsXpress in any way. optionsXpress is neither a party to this lawsuit nor are its interests adequately represented. Therefore, collateral estoppel does not apply. *See e.g, E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004). Furthermore, optionsXpress may challenge the effect of the Order before another forum. *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 254 Fed. App'x 769, 771 (11th Cir. 2007) (agreeing with the district court's conclusion "that prejudice to the [non-parties] would be minimal as they could litigate the constitutionality of the consent decree in another forum"). Finally, the policy of *stare decisis* will not prejudice optionsXpress. *Cf. Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (holding that stare decisis could practically disadvantage a litigant, a requirement under permissive intervention).

Although the FINRA panel is not legally bound to do so, optionsXpress argues that "the FINRA Panel has already indicated the degree to which it will likely defer to this Court's determination on the tracing issue." Mot. at 4. But any prejudice from that deference is not for this Court to prevent. Fact-finding is "no small task," and "[t]hose charged with doing so ought not be tempted to abdicate the responsibility to the conclusions of another." *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1306 (11th Cir. 2000). The Eleventh Circuit wrote those words in an analogous case denying intervention. In *Crawford*, a disability applicant before a state

6

administrative judge sought to admit the findings of his federal counterpart. The applicant's employer and its insurer moved to intervene in the federal hearing, pursuant to a regulation allowing those "adversely affected" by the hearing to join as parties. Florida law would have allowed the state administrative judge to rely on the federal judge's findings and order the employer and its insurer to pay benefits. The Eleventh Circuit denied intervention, reasoning that the employer and its insurer would feel the adverse effect only before the state judge, not the federal judge. It was not the federal judge's finding, but "what the State of Florida allows the [state judge], in the state proceeding, to do with those findings that concerns them . . . ." *Id.* at 1307. Likewise, here, it is not the Court's Order, but what the FINRA arbitration panel will do with that Order that concerns optionsXpress. Any prejudice to optionsXpress is therefore not felt before this Court. Accordingly, the second and third factors weigh against intervention.

## C.  UNUSUAL CIRCUMSTANCES

optionsXpress alleges no "unusual circumstances" favoring intervention. There was no failure to notify optionsXpress of its interest in the case, *see Brown ex rel. O'Neil v. Bush*, 194 Fed. App'x 879, 883 (11th Cir. 2006), and no question as to the legality of the Court's Order, *see Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986). That the Receiver may represent some public interest does not militate in favor of intervention, *see Campbell v. Hall-Mark Elec. Corp.*, 808 F.2d 775 (11th Cir. 1987) (denying an executive department's motion to intervene), and this case presents no issue of constitutional concern, like the rights of detainees, *see e.g., Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989). Therefore, this factor weighs against intervention.

## CONCLUSION

After weighing the timeliness factors, it is hereby

**ORDERED** and **ADJUDGED** that:

optionsXpress, Inc.'s Motion to Intervene and Modification of Order Dated January 23, 2013 [ECF No. 293] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 6th day of July, 2015.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*